Shaun H. Crosner (SBN 259065)
SCrosner@PasichLLP.com
Michael S. Gehrt (SBN 246450)
MGehrt@PasichLLP.com
PASICH LLP
1230 Rosecrans Avenue, Suite 690
Manhattan Beach, CA 90266
Telephone: (424) 313-7860
Facsimile: (424) 313-7890

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARDENAS MARKETS LLC, a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>HOUSTON CASUALTY COMPANY, a Texas Corporation,<br><br>Defendant. | Case No. 5:23-cv-00682<br><br>**COMPLAINT FOR**<br><br>**1. BREACH OF CONTRACT**<br><br>**2. TORTIOUS BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>**3. DECLARATORY RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Cardenas Markets LLC ("Cardenas") complains of Defendant Houston Casualty Company ("HCC") and alleges as follows:

## NATURE OF THIS LAWSUIT

1. This is a lawsuit by Cardenas to recover the full amounts owed under a liability insurance policy issued by HCC to protect Cardenas against, among other things, the costs associated with employee lawsuits. It arises out of HCC's wrongful and bad faith refusal to pay Cardenas' defense fees and costs incurred in connection with a series of underlying lawsuits alleging, among other things, that Cardenas violated the California Labor Code by failing to provide its employees with suitable seating and failed to reimburse its employees reasonable and necessary business expenses. As explained below, these allegations fall squarely within the coverage afforded by the policy issued by HCC. However, rather than honoring its duties in connection with the underlying lawsuits, HCC chose to abandon its insured and repudiate its coverage obligations, thereby causing Cardenas to suffer millions of dollars in damages. By this lawsuit, Cardenas seeks to recover the policy benefits to which it is entitled, plus interest, attorneys' fees, and punitive damages.

## JURISDICTION AND VENUE

2. The Court has subject matter jurisdiction to hear this case under 28 U.S.C § 1332 based on complete diversity of citizenship between the parties and because the amount in controversy, exclusive of costs and interest, exceeds $75,000.

3. Venue is proper in this District because a substantial part of the events giving rise to Cardenas' claims, including the delivery of the insurance policy at issue in this litigation and the defense and litigation of the Underlying Claims, occurred in this District. HCC has also marketed, advertised, sold, and maintained insurance policies, and otherwise conducted extensive business, within this District.

## THE PARTIES

4. Cardenas operates a chain of Hispanic grocery stores, with stores throughout California and in Las Vegas, Nevada. Cardenas is a Delaware single-

member limited liability company based in Ontario, California, and is indirectly owned (through a series of Delaware single-member limited liability companies) by Heritage Grocers Group Business Trust. Heritage Grocers Group Business Trust is a California business trust, and its co-trustees are individuals residing in California and Arizona. None of the members or beneficiaries of Heritage Grocers Group Business Trust are citizens of Texas.

5. On information and belief, HCC is a corporation organized and incorporated under the laws of the State of Texas with its principal place of business in Texas, and as such, is a citizen of Texas within the meaning of 28 U.S.C. § 1332(c)(1).

6. Cardenas is informed and believes that HCC is a member of the Tokio Marine HCC insurance group. According to their website, HCC and the Tokio Marine HCC insurance group "are always committed to operating for the benefit of customers" and "look beyond profit [to] deliver on commitments . . . ." *See* https://www.tmhcc.com/en-us/about-us/philosophy-vision. They promise to "be there when called upon." *Id.*

## THE POLICY

7. For the January 1, 2019, to January 1, 2020, policy period, Cardenas was insured under HCC liability insurance policy no. 14-MG-19-A14129 (the "Policy"). A true and correct copy of at least the relevant portions of the Policy is attached hereto as Exhibit A and incorporated herein by reference.

8. The Policy provides coverage for a wide variety of liabilities and is organized into multiple "Coverage Sections." Pursuant to the Employment Practices Liability ("EPL") Coverage Section, the Policy affords $10,000,000 in total coverage, subject to a $250,000 retention per "Claim." Ex. A, Declarations.

9. The EPL Coverage Section in the Policy obligates HCC to "pay . . . **Loss** arising from **Claims** first made against the **Insureds** during the **Policy Period** .

1 . . for **EPL Acts**. *Id.*, Employment Practices Coverage Section, EPL Insuring Agreement.

10. The Policy defines "Loss" to include "**Defense Costs** and any damages, settlements, judgments or other amounts which an **Insured** is legally obligated to pay as a result of a **Claim**, including claimants' attorneys fees that an **Insured** is obligated to pay, pre- and post-judgment interest, and punitive, exemplary and multiplied damages . . . ." *Id.*, General Definitions, Extensions, Exclusions and Conditions, General Definitions, ¶ (P).

11. The Policy defines "Defense Costs" to mean "costs, charges and expenses . . . resulting from the investigation, adjustment, defense or appeal of a **Claim** against an **Insured** . . . ." *Id.*, ¶ (D).

12. The Policy defines "Insured" to include Hispanic Food Holdings LLC and its "Subsidiaries." *Id.*, ¶ (N).

13. The Policy defines "Subsidiary" in pertinent part to mean "any entity, including any corporation, limited liability company or joint venture, during any time (whether before or during the **Policy Period**) in which [Hispanic Food Holdings LLC]:

    (1) owns or owned more than 50% of the equity or voting rights of such entity, or

    (2) has or had **Management Control**,

    either directly or indirectly through one or more other **Subsidiaries**." *Id.*, ¶ (V).

14. By virtue of Hispanic Food Holdings LLC's interest in Cardenas, Cardenas qualifies as a "Subsidiary" as defined in the Policy. Accordingly, Cardenas also qualifies as an "Insured" under the Policy.

15. The Policy defines "Claim" to include "the receipt of a written demand for monetary, non-monetary or injunctive relief" and "any civil proceeding, arbitration, mediation or other similar dispute resolution proceeding (collectively,

4
**COMPLAINT AND DEMAND FOR JURY TRIAL**

"ADR"), any criminal proceeding, or any administrative or regulatory proceeding, commenced upon receipt of any of the following in written form: a complaint, a demand for ADR, an indictment, information or similar charging document, or a notice of charges or formal investigative order." *Id.*, ¶ (B)(1), (2).

16. The Policy defines "EPL Acts" in pertinent part to include "any . . . **Workplace Tort** . . . committed or allegedly committed by the **Insured Entity** . . . against an **Insured Person** of or an applicant for employment with the **Insured Entity** . . . ." *Id.*, EPL Definitions, ¶ (C).

17. The Policy defines "Workplace Tort" to include any "employment-related misrepresentation" and any "failure to establish, monitor or enforce workplace practices, policies and procedures (or violation of any such practices, policies or procedures)." *Id.*, ¶ (G).

18. The Policy states that "[a] single retention will apply to the covered portion of each and every single **Claim**, and a single retention will apply to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or **Related Wrongful Acts**." *Id.*, General Definitions, Extensions, Exclusions and Conditions, General Conditions, ¶ A(6).

19. The Policy further states that "[a]ll **Claims** alleging, arising out of, based upon or attributable to the same **Wrongful Acts** or **Related Wrongful Acts** will be considered to be a single **Claim** and will be considered to have been made at the time the earliest such **Claim** was made." *Id.*, ¶ A.

20. The Policy defines "Wrongful Act" in pertinent part to include any "EPL Act." *Id.*, General Definitions, Extensions, Exclusions and Conditions, General Definitions, ¶ (X).

21. The Policy defines "Related Wrongful Act" to mean "all **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction or cause or series of facts, circumstances, situations, events, transactions or causes, or that have a causal connection." *Id.*, ¶ (U).

5
**COMPLAINT AND DEMAND FOR JURY TRIAL**

## THE UNDERLYING LITIGATION AND HCC'S BREACHES

22. As is relevant to this lawsuit, Cardenas reported four claims to HCC seeking coverage under the Policy's EPL Coverage Section. In each instance, HCC wrongfully denied coverage and acted in bad faith, as explained below.

### The *Garcia* Lawsuit

23. The first claim, titled *Garcia v. Cardenas Markets LLC*, San Bernardino Superior Court Case No. CIVDS1917380 (the "*Garcia* lawsuit"), was filed on or about June 12, 2019, during the Policy's policy period. A true and correct copy of the June 12, 2019, complaint filed in the *Garcia* lawsuit is attached hereto as Exhibit B and incorporated herein by reference.

24. The June 12, 2019, complaint in the *Garcia* lawsuit included a single cause of action for violation of California's Private Attorneys General Act ("PAGA"). The lawsuit was premised on allegations that Cardenas violated certain provisions of the California Labor Code—including Labor Code section 2802, which governs an employer's obligation to indemnify its employees for reasonable and necessary business expenses incurred in the discharge of their duties. Specifically, the plaintiffs in the *Garcia* lawsuit alleged that Cardenas "did not have a policy in place or a practice of reimbursing Plaintiffs and the other Aggrieved Employees for their reasonable and necessary business expenses," and they further alleged that Cardenas "has violated § 2802 with respect to Plaintiffs and all Aggrieved Employees. *See* Ex. B, ¶ 46; *see also id.*, ¶¶ 50-54 (asserting claim for violation of PAGA).

25. Cardenas promptly reported the *Garcia* lawsuit to HCC, seeking coverage under the Policy. However, rather than honoring its duties under the Policy and the law, HCC denied coverage for the *Garcia* lawsuit in a letter dated October 29, 2019. In denying coverage under the EPL Coverage Section, HCC argued that General Exclusion (B) barred coverage for the entirety of the *Garcia* lawsuit. General Exclusion (B) in the Policy purports to bar coverage for "Loss" in

connection with any lawsuits "arising out of, based upon or attributable to . . . any **Wage & Hour Violation**," which in turn is defined as:

> any actual or alleged violation of any provision of the Fair Labor Standards Act or any other federal, state, local or foreign law (statutory or common) governing wage, hour or payroll practices, or any amendment to or rule or regulation promulgated thereunder (including but not limited to any law, rule or regulation regarding improper payroll deductions or misclassification of exempt/non-exempt employee status)."

Ex. A, General Definitions, Extensions, Exclusions and Conditions, General Exclusions, ¶ (B); *id.*, General Definitions, ¶ (W).

26. Cardenas gave HCC multiple opportunities to reconsider and retract its wrongful denial of coverage for the *Garcia* lawsuit. In correspondence and communications in the years following HCC's denial of coverage, Cardenas explained to HCC that the General Exclusion (B) did not bar coverage for the allegations in the *Garcia* lawsuit concerning Cardenas' purported violations of California Labor Code section 2802 and its alleged failure to reimburse its employees' business expenses. Specifically, Cardenas noted that General Exclusion (B) only barred coverage for alleged violations of laws governing "wage, hour or payroll practices." Cardenas explained that the exclusion was inapplicable because Labor Code section 2802 governed reimbursement of business expenses—not wages paid, hours worked, or Cardenas' payroll practices. Cardenas cited to considerable authority in support of its position, including a 2019 California Court of Appeal decision holding that Labor Code section 2802 was not a "wage and hour law" for purposes of interpreting a similar exclusion in an EPL insurance policy. Despite this authority, HCC failed and refused to retract its denial of coverage and provide Cardenas with the coverage to which it was and is entitled.

27. As a result of HCC's wrongful denial of coverage, Cardenas was forced to pay for its own legal fees and costs in the defense of the *Garcia* lawsuit. All told, Cardenas spent approximately $325,000 in connection with the defense of the *Garcia* lawsuit.

28. In 2021, the parties in the *Garcia* lawsuit reached a settlement. Pursuant to the parties' settlement agreement, Cardenas agreed to pay a total of $6,500,000 to resolve the litigation. Also pursuant to their settlement agreement, the parties stipulated that the *Garcia* plaintiffs would be permitted to file a First Amended Class and Representative PAGA Action Complaint, which they did on or about April 25, 2021. A true and correct copy of the April 25, 2021, First Amended Complaint filed in the *Garcia* lawsuit is attached hereto as Exhibit C and incorporated herein by reference. The First Amended Complaint in the *Garcia* lawsuit included ten causes of action for (1) Failure to Pay Split Shift Premiums, (2) Failure to Pay Overtime Wages, (3) Failure to Provide Compliant Rest Periods and/or Pay Missed Rest Period Premiums, (4) Failure to Provide Complaint Meal Periods and/or Pay Missed Meal Period Premiums, (5) Failure to Reimburse Business Expenses in violation of California Labor Code section 2802, (6) Wage Statement Violations, (7) Waiting Time Penalties, (8) Failure to Pay Timely Wages, (9) Unfair Competition, and (10) PAGA violations.

29. Following final court approval of the settlement on or about July 1, 2021, Cardenas paid $6,500,000 pursuant to the settlement reached with the *Garcia* plaintiffs. The *Garcia* lawsuit was subsequently dismissed.

30. To the extent not waived or otherwise excused, Cardenas has complied with all terms and conditions precedent contained in the Policy. Therefore, Cardenas is entitled to all benefits of insurance provided by the Policy. Nevertheless, HCC has wrongfully failed and refused to indemnify or reimburse any of Cardenas' defense fees, costs, or settlement expenses incurred in connection with the *Garcia* lawsuit.

### The *Esquivel* Lawsuit

31. The second claim, titled *Esquivel v. Cardenas Markets LLC*, Riverside Superior Court Case No. RIC 1905393 (the "*Esquivel* lawsuit"), was filed on or about October 29, 2019, during the Policy's policy period. A true and correct copy of the October 29, 2019, complaint filed in the *Esquivel* lawsuit is attached hereto as Exhibit D and incorporated herein by reference.

32. The October 29, 2019, complaint in the *Esquivel* lawsuit included two causes of action for alleged PAGA violations. The lawsuit was premised on allegations that Cardenas failed to provide its employees with access to suitable seating during their shifts, purportedly in violation of the California Labor Code and related regulations.

33. Cardenas promptly reported the *Esquivel* lawsuit to HCC, seeking coverage under the Policy. However, rather than honoring its duties under the Policy and the law, HCC denied coverage for the *Esquivel* lawsuit in letters dated November 18, 2019, and August 21, 2020. In denying coverage for the *Esquivel* lawsuit, HCC incorrectly asserted that the *Esquivel* lawsuit did not allege any "Workplace Torts" and, thus, did not fall within the coverage afforded in the Policy's EPL Coverage Section.

34. On multiple occasions, Cardenas explained to HCC that there was no merit to its denial of coverage for the *Esquivel* lawsuit. For instance, in a November 12, 2020, letter to HCC, Cardenas noted that the *Esquivel* complaint is replete with allegations that Cardenas failed to establish or enforce appropriate workplace practices and policies with respect to seating for its employees. Cardenas explained that these allegations fall squarely within the Policy's coverage for alleged "Workplace Torts" and, in particular, the alleged "failure to establish, monitor or enforce workplace practices, policies and procedures (or violation of any such practices, policies or procedures)." Cardenas also noted that the *Esquivel* complaint alleges "Workplace Torts" in the form of "employment-related misrepresentations,"

including the allegation that Cardenas "did not inform Plaintiff that she was allowed to sit down, provide any means for her to sit down, or mention any policy regarding sitting." *See* Ex. D., ¶ 47.

35. Despite these points, which were conveyed and reiterated to HCC on several occasions, HCC remained entrenched in its wrongful denial of coverage for the *Esquivel* lawsuit. As a result, Cardenas was forced to pay for its own legal fees and costs in the defense of the *Esquivel* lawsuit, which remains pending. To date, Cardenas has spent more than $206,000 in connection with the defense of the *Esquivel* lawsuit.

36. The parties in the *Esquivel* lawsuit recently reached a tentative settlement of the litigation that is in the process of being documented and is subject to court approval. Given HCC's refusal to acknowledge coverage for the *Esquivel* lawsuit, Cardenas is informed and believes, and on that basis alleges, that HCC will neither indemnify Cardenas for its future defense costs nor contribute to the tentative settlement in the *Esquivel* lawsuit.

37. To the extent not waived or otherwise excused, Cardenas has complied with all terms and conditions precedent contained in the Policy. Therefore, Cardenas is entitled to all benefits of insurance provided by the Policy. Nevertheless, HCC has wrongfully failed and refused to indemnify or reimburse any of Cardenas' defense fees, costs, or settlement expenses incurred in connection with the *Esquivel* lawsuit.

### The *Rivera de Cruz* Lawsuit

38. The third claim, titled *Rivera de Cruz v. Cardenas Markets LLC*, Alameda Superior Court Case No. 22CV005906 (the "*Rivera de Cruz* lawsuit"), was filed on or about January 24, 2022. A true and correct copy of the January 24, 2022, complaint filed in the *Rivera de Cruz* lawsuit is attached hereto as Exhibit E and incorporated herein by reference.

39. The *Rivera de Cruz* lawsuit is a putative class action alleging that Cardenas's employment practices violate various provisions of the California Labor Code and governing Wage Orders. The January 24, 2022, complaint in the *Rivera de Cruz* lawsuit includes causes of action for (1) Failure to Pay Overtime Wages in Violation of Labor Code sections 510 and 1198; (2) Failure to Pay all Wages and Minimum Wages in Violation of Labor Code sections 1182, 1194, 1197, and 1198; (3) Failure to Provide Meal Periods in Violation of Labor Code sections 226.7, 516, and 1198; (4) Failure to Provide Rest Periods in Violation of Labor Code sections 226.7, 516, and 1198; (5) Failure to Timely Furnish Accurate Itemized Wage Statements in Violation of Labor Code section 226(a); (6) Waiting Time Penalties Pursuant to Labor Code sections 201 and 203; (7) Failure to Provide Suitable Seating in Violation of Labor Code section 1198; (8) Failure to Reimburse Business Expenses in Violation of Labor Code section 2802; (9) Failure to Provide COVID-19 Supplemental Paid Sick Leave in Violation of Labor Code section 248.2; (10) Failure to Pay Accrued Vacation Wages in Violation of Labor Code section 227.3; and (11) Violations of Business & Professions Code section 17200, et seq.

40. On or about April 19, 2022, a First Amended Complaint was filed in the *Rivera de Cruz* lawsuit. This First Amended Complaint included the same causes of action as the January 24, 2022, complaint filed in the lawsuit, as well as a twelfth cause of action for PAGA violations. A true and correct copy of the April 19, 2022, complaint filed in the *Rivera de Cruz* lawsuit is attached hereto as Exhibit F and incorporated herein by reference.

41. On or about May 20, 2022, the plaintiff in the *Rivera de Cruz* lawsuit filed a dismissal without prejudice of all causes of action in the First Amended Complaint other than the cause of action for PAGA violations. As such, the *Rivera de Cruz* lawsuit presently includes only one cause of action—i.e., the twelfth cause of action for PAGA violations.

42. Although the *Rivera de Cruz* lawsuit was filed after the Policy's policy period, it is covered under the Policy because it alleges "the same **Wrongful Acts** or **Related Wrongful Acts**" as those alleged in the *Garcia* lawsuit and the *Esquivel* lawsuit. In particular, like the *Garcia* lawsuit and the *Esquivel* lawsuit, the *Rivera de Cruz* lawsuit alleges that Cardenas failed to reimburse its employees' reasonable and necessary business expenses and failed to provide its employees with suitable seating during their shifts. Given these overlapping allegations, and in light of the Policy provisions quoted above, the *Rivera de Cruz* lawsuit is "considered to have been made at the time" the *Garcia* and *Esquivel* lawsuits were made—i.e., squarely during the Policy's policy period.

43. Cardenas promptly reported the *Rivera de Cruz* lawsuit to HCC, seeking coverage under the Policy. However, based in large part on its incorrect and bad faith coverage positions taken with respect to the *Garcia* and *Esquivel* lawsuits, HCC has failed and refused to acknowledge coverage for the *Rivera de Cruz* lawsuit. As a result, Cardenas has been forced to pay its own legal fees and costs in the defense of the *Rivera de Cruz* lawsuit, which remains pending. To date, Cardenas has spent more than $18,000 in connection with the defense of the *Rivera de Cruz* lawsuit.

44. Given HCC's refusal to acknowledge coverage for the *Rivera de Cruz* lawsuit, Cardenas is informed and believes, and on that basis alleges, that HCC will not indemnify Cardenas for its future defense costs any settlement or judgment in the *Rivera de Cruz* lawsuit.

45. To the extent not waived or otherwise excused, Cardenas has complied with all terms and conditions precedent contained in the Policy. Therefore, Cardenas is entitled to all benefits of insurance provided by the Policy. Nevertheless, HCC has wrongfully failed and refused to indemnify or reimburse any of Cardenas' defense fees, costs, or settlement expenses incurred in connection with the *Rivera de Cruz* lawsuit.

### The *Irias* Lawsuit

46. The fourth and final claim, titled *Irias v. Cardenas Markets LLC*, Alameda Superior Court Case No. 22CV010993 (the "*Irias* lawsuit"), was filed on or about May 9, 2022. A true and correct copy of the May 9, 2022, complaint filed in the *Irias* lawsuit is attached hereto as Exhibit G and incorporated herein by reference.

47. The *Irias* lawsuit is a putative class action and representative action alleging that Cardenas's employment practices violate various provisions of the California Labor Code and governing Wage Orders. The May 9, 2022, complaint in the *Rivera de Cruz* lawsuit includes causes of action for (1) Failure to Pay Minimum Wages in Violation of Labor Code sections 1194 and 1194.2; (2) Failure to Pay Overtime Wages in Violation of Labor Code section 510; (3) Failure to Provide Lawful Meal Periods and Pay Meal Period Premiums Pursuant to Labor Code sections 226.7 and 512; (4) Failure to Provide Lawful Rest Periods and Pay Rest Period Premiums Pursuant to Labor Code section 226.7; (5) Penalties pursuant to Labor Code section 226(e); (6) Waiting Time Penalties Pursuant to Labor Code section 203; (7) Failure to Reimburse Business Expenses in Violation of Labor Code section 2802; (8) Violation of Business & Professions Code section 17200, et seq.; and (9) PAGA Penalties for violations of Labor Code sections 200, 201, 202, 203, 204, 210, 226, 226.3, 226.7, 510, 512, 558, 1174, 1174.5, 1194, 1197, 1197.1, 1198, 1198.5, 1199, 2802, and IWC Wage Order No. 7-2001 and/or other applicable wage orders.

48. On or about June 13, 2022, the plaintiff in the *Irias* lawsuit filed a dismissal without prejudice of all causes of action in the May 9, 2022, complaint other than the ninth cause of action for PAGA violations. As such, the *Irias* lawsuit presently includes only one cause of action—i.e., the ninth cause of action for PAGA violations.

49. Although the *Irias* lawsuit was filed after the Policy's policy period, it is covered under the Policy because it alleges "the same **Wrongful Acts** or **Related Wrongful Acts**" as those alleged in the *Garcia* lawsuit. In particular, like the *Garcia* lawsuit, the *Irias* lawsuit alleges that Cardenas failed to reimburse its employees' reasonable and necessary business expenses. Given these overlapping allegations, and in light of the Policy provisions quoted above, the *Irias* lawsuit is "considered to have been made at the time" the *Garcia* lawsuits was made—i.e., squarely during the Policy's policy period.

50. Cardenas promptly reported the *Irias* lawsuit to HCC, seeking coverage under the Policy. However, based in large part on its incorrect and bad faith coverage positions taken with respect to the *Garcia* lawsuit, HCC has failed and refused to acknowledge coverage for the *Irias* lawsuit. As a result, Cardenas has been forced to pay its own legal fees and costs in the defense of the *Irias* lawsuit, which remains pending. To date, Cardenas has spent more than $22,000 in connection with the defense of the *Irias* lawsuit.

51. Given HCC's refusal to acknowledge coverage for the *Irias* lawsuit, Cardenas is informed and believes, and on that basis alleges, that HCC will not indemnify Cardenas for its future defense costs any settlement or judgment in the *Irias* lawsuit.

52. To the extent not waived or otherwise excused, Cardenas has complied with all terms and conditions precedent contained in the Policy. Therefore, Cardenas is entitled to all benefits of insurance provided by the Policy. Nevertheless, HCC has wrongfully failed and refused to indemnify or reimburse any of Cardenas' defense fees, costs, or settlement expenses incurred in connection with the *Irias* lawsuit.

## FIRST CAUSE OF ACTION

### (*For Breach of Contract*)

53. Cardenas realleges and incorporates by reference paragraphs 1 through 52 above, inclusive.

54. HCC has a duty under the Policy, the law, and insurance industry custom and practice to pay Cardenas' fees and costs in defense of the *Garcia*, *Esquivel*, *Rivera de Cruz*, and *Irias* lawsuits. HCC's duty arose at least at the time Cardenas' reasonable and necessary defense fees and costs exceeded the Policy's applicable retention and will continue through final resolution of these underlying lawsuits.

55. HCC also had and has a duty under the Policy to indemnify Cardenas in connection with the *Garcia* settlement, as well as any settlement or judgment in the *Esquivel*, *Rivera de Cruz*, and *Irias* lawsuits.

56. Furthermore, HCC had a duty under the Policy, the law, and insurance industry custom and practice to promptly conduct a full and thorough investigation, including all bases that might support Cardenas' claim for coverage for the *Garcia*, *Esquivel*, *Rivera de Cruz*, and *Irias* lawsuits. HCC also had a duty to give at least as much consideration to Cardenas' interests as it gave its own interests in assessing coverage for the *Garcia*, *Esquivel*, *Rivera de Cruz*, and *Irias* lawsuits.

57. HCC breached its duties under the Policy by, among other things,

  a. Failing to perform a meaningful investigation into Cardenas' claim for coverage for the *Garcia*, *Esquivel*, *Rivera de Cruz*, and *Irias* lawsuits;

  b. Failing and refusing to pay or reimburse Cardenas' legal fees and costs incurred in connection with the defense of the *Garcia*, *Esquivel*, *Rivera de Cruz*, and *Irias* lawsuits;

  c. Failing and refusing to indemnify Cardenas for any portion of the settlement in the *Garcia* lawsuit; and

      d. Otherwise refusing to perform its duties under the Policy.

58. As a direct and proximate result of HCC's breach of contract, Cardenas has sustained damages in excess of the Policy's retention and in excess of the jurisdictional requirements, plus interest at the legal rate. Cardenas will seek leave to amend its complaint once Cardenas ascertains the full extent of its damages.

## SECOND CAUSE OF ACTION

### (*For Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing*)

59. Cardenas realleges and incorporates by reference paragraphs 1 through 52 above, and 54 through 57 above, inclusive.

60. Implied in the Policy was a covenant that HCC would act in good faith and deal fairly with Cardenas, that HCC would do nothing to interfere with the rights of Cardenas to receive benefits due under the Policy, and that HCC would give at least the same level of consideration to Cardenas's interests as it gave to its own interest.

61. HCC also had a duty under the Policy, the law, and insurance industry custom, practice, and standards to conduct a prompt and thorough investigation including all of the bases that might support Cardenas's claim for coverage, before asserting coverage defenses or denying coverage.

62. Instead of complying with these duties, HCC acted in bad faith by, among other things,

      a. Failing to promptly conduct a full and thorough investigation of the *Garcia*, *Esquivel*, *Rivera de Cruz*, and *Irias* lawsuits;

      b. Failing to inquire into bases that might support coverage for the *Garcia*, *Esquivel*, *Rivera de Cruz*, and *Irias* lawsuits;

      c. Unreasonably failing and refusing to honor its promises and representations in the Policy;

      d. Giving greater consideration to its own interests than it gave to Cardenas' interests; and

  e. Otherwise acting as alleged above.

63. In breach of the implied covenant of good faith and fair dealing, HCC did the things and committed the acts alleged above for the purpose of consciously withholding from Cardenas the rights and benefits to which it is and was entitled under the Policy. HCC's acts are inconsistent with the reasonable expectations of Cardenas, are contrary to established insurance industry custom and practice, are contrary to legal requirements, are contrary to the express terms of the Policy, and constitute bad faith.

64. As a direct and proximate result of HCC'S acts, Cardenas has sustained damages in excess of the Policy's retention, plus interest at the legal rate. Cardenas continues to suffer damages because of HCC's bad faith and will seek leave to amend its complaint once Cardenas ascertains the full extent of its damages. Also, pursuant to *Brandt v. Superior Court*, 37 Cal. 3d 813 (1985), Cardenas is entitled to recover attorneys' fees that it has previously incurred, and continues to incur, in its efforts to obtain the benefits due under the Policy that HCC wrongfully withheld, and is withholding, in bad faith. Cardenas also is entitled to interest thereon at the maximum legal rate.

65. Cardenas is informed and believes, and on that basis alleges, that HCC—acting through one or more of its officers, directors, or other corporate employees with substantial independent and discretionary authority over significant aspects of its business—performed, authorized, or ratified the bad faith conduct alleged above.

66. HCC's conduct is despicable and has been done with a conscious disregard of Cardenas' rights, constituting oppression, fraud, and/or malice. HCC has engaged in a series of acts designed to deny Cardenas the benefits due under the Policy. Specifically, HCC, by acting as alleged above, in light of information, facts, and relevant law to the contrary, consciously disregarded Cardenas' rights and forced Cardenas to incur substantial financial losses, thereby inflicting substantial

financial damage on Cardenas. HCC ignored Cardenas' interests and concerns with the requisite intent to injury within the meaning of California Civil Code section 3294. Therefore, Cardenas is entitled to recover punitive damages from HCC in an amount sufficient to punish and to make an example of HCC and to deter similar conduct in the future.

## THIRD CAUSE OF ACTION

### (*For Declaratory Relief*)

67. Cardenas realleges and incorporates by reference paragraphs 1 through 52 above, inclusive.

68. A controversy exists between Cardenas and HCC. Cardenas contends that HCC has a duty under the Policy to cover Cardenas' defense costs in incurred in connection with the *Garcia*, *Esquivel*, *Rivera de Cruz*, and *Irias* lawsuits. Cardenas further contends that HCC has a duty under the Policy to indemnify Cardenas for all or part of the settlement in the *Garcia* lawsuit, as well as any settlement or judgment in the *Esquivel*, *Rivera de Cruz*, and *Irias* lawsuits. HCC disputes Cardenas' contentions.

69. Therefore, declaratory relief is necessary to determine Cardenas' rights under the Policy. Specifically, Cardenas seeks a declaration from the Court that HCC is obligated to reimburse Cardenas for the defense fees and costs it incurred and is incurring in defense of the *Garcia*, *Esquivel*, *Rivera de Cruz*, and *Irias* lawsuits. Cardenas further seeks a declaration from the Court that HCC is obligated to indemnify Cardenas for the settlement in the *Garcia* lawsuit. Finally, Cardenas seeks a declaration from the Court that HCC is obligated to indemnify Cardenas for any settlement or judgment in the *Esquivel*, *Rivera de Cruz*, and *Irias* lawsuits.

70. A declaration is necessary at this time so that the parties' dispute may be resolved and that the parties may be aware of their respective rights and duties.

## PRAYER FOR RELIEF

WHEREFORE, Cardenas prays for relief as follows:

**ON THE FIRST CAUSE OF ACTION**

1. For damages, plus interest, according to proof at the time of trial;

**ON THE SECOND CAUSE OF ACTION**

2. For damages according to proof at the time of trial, including reasonable attorneys' fees incurred in obtaining the benefits due under the Policy, plus interest;

3. For punitive damages in an amount to be determined at the time of trial;

**ON THE THIRD CAUSE OF ACTION**

4. For a declaration in accord with Cardenas' contentions stated above;

**ON ALL CAUSES OF ACTION**

5. For costs of suit incurred herein; and

6. For such other, further, and/or different relief as may be deemed just and proper.

DATED: April 18, 2023         PASICH LLP

By: */s/ Shaun H. Crosner*
Shaun H. Crosner
Attorneys for Plaintiff

# DEMAND FOR JURY TRIAL

Plaintiff Cardenas Markets LLC hereby demands a trial by jury in this action.

DATED: April 18, 2023

PASICH LLP

By: */s/ Shaun H. Crosner*
Shaun H. Crosner
Attorneys for Plaintiff